**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MOHAMMED KOSHANI,** | : | |
| Petitioner | : | CIVIL ACTION NO. 1:05-2626 |
| v. | : | (CALDWELL, D.J.) |
| | | (MANNION, M.J.) |
| **THOMAS HOGAN, Warden, York Prison, THOMAS DECKER,** | : | |
| **Deputy Field Office Director, Department of Homeland** | : | |
| **Security, & MICHAEL CHERTOFF, Secretary of** | : | |
| **Homeland Security,** | : | |
| Respondents | : | |

## REPORT AND RECOMMENDATION

Before the court is the relator's petition for writ of habeas corpus. For the following reasons, the court recommends that the petition be granted.

**I.     Background**

The relator, a native and citizen of Afghanistan, entered the United States on April 3, 1992, as a lawful permanent resident.[1]  (Doc. No. 4 ex. A.)  On December 1, 2003, he was convicted in a New York state court of criminal possession of a controlled substance with intent to distribute and sentenced to one and one-half to four and one-half years' imprisonment.  (Doc. No. 4 ex. B.)  On July 15, 2004, the Bureau of Immigration and Customs Enforcement ("ICE") served a notice to appear on the relator charging that he was deportable

---

[1]According to the relator, he has spent most of his life outside Afghanistan. Born in 1974, he claims to have immigrated to Germany in the mid-1980s. The relator's parents both reside in the United States. (Doc. Nos. 4 ex. E & 7.)

because of his conviction for an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii), and a violation of state drug laws, id. § 1227(a)(2)(B)(I). (Doc. No. 4 ex. A.) On January 31, 2005, the respondents took the relator into custody.[2] (Doc. No. 4 ex. E.) On April 19, 2005, an immigration judge ordered the relator removed to Afghanistan, which judgment the relator did not challenge and which, consequently, became final as of that date. (Doc. No. 4 ex. C.)

The ICE requested a travel document from the Afghani consulate on June 8, 2005, which has still not been issued. On August 3, 2005, the consul general requested an interview with the relator and stated he would review the relator's case file. On August 5, 2005, the ICE conducted a custody review. In the custody review, the ICE reviewing officer determined that the consul general "will issue a travel document in the near future" and recommended that the relator be continued in custody because the imminence of deportation made the relator a flight risk. (Doc. No. 4 ex. E.) Respondent Decker, the deciding official, approved the recommendation, commenting: "As the subject's removal appears to be imminent [and] his release would pose a flight risk the subject will remain in ICE custody." (Doc. No. 4 ex. E) (emphasis added). In the custody review, the ICE made several findings: The relator has a place to live in the United States, has close family ties in the United States (his parents), has employment

---

[2] It is unclear from the petition and response when the relator was taken into custody. The relator states that he entered ICE custody on December 22, 2005, which seems an obvious error given that it succeeds the date on which he petitioned for habeas corpus. The court will assume the date given here, which it found in the ICE's custody review worksheet, is the correct date.

prospects, has a GED, has vocational training, and took a six-months alcohol- and substance-abuse treatment course. The ICE further found that the relator was not subject to detention under 8 C.F.R. § 241.14 because he has no ties to terrorism; poses no special security concerns; and, is not specially dangerous on the basis of posing a threat to the public by having committed a crime of violence, having a mental disorder, or being likely to be violent in the future. (Doc. No. 4 ex. E.)

In an e-mail dated October 6, 2005, the reviewing officer stated that the consulate interviewed the relator on September 2, 2005. "The consulate indirectly stated that they would issue a travel document for" the relator. (Doc. No. 4 ex. D.) But the officer did not hear from the consulate after the interview, despite two faxes sent between the date of the interview and October 6, 2005, and at least three phone calls between October 6, 2005, and November 18, 2006. After the last phone call, the officer made a notation that the consulate would call back on November 21, 2005, but there is no indication in the record that it did. The officer also noted in the e-mail that the relator was "compliant" and "would like to leave the country." (Doc. No. 4 ex. D.)

On December 20, 2005, the relator filed the instant petition. He contends that his continued detention beyond the presumptively reasonable six-month period approved by the Supreme Court in Zadvydas v. Davis, 533 U.S. 678 (2001), is unconstitutional "because there is no significant likelihood of removal in the reasonably foreseeable future." (Doc. No. 1.) The respondents filed their

3

response on January 12, 2006. They concede that the presumptively reasonable detention period is over, but contend that the relator's continued detention is reasonable. They first contend that the relator has failed to meet the threshold under Zadvydas for showing that continued detention is unreasonable because he has not shown "good reason" that removal is unlikely. (Doc. No. 4.) They next argue that, even if the relator has met the Zadvydas threshold, his removal in the reasonably foreseeable future is likely because the consulate interviewed the relator and informally indicated that it would issue a travel document.

On February 8, 2006, the relator filed a traverse. He argues that he has shown "good reason" because he and his mother have cooperated with the ICE to facilitate his removal, including by submitting a birth certificate and fingerprints to the consulate, and the consulate has told him and his mother that it will not issue a travel document. He also notes the length of time in which his removal has been pending during which the ICE has been unable to obtain travel documents. (Doc. No. 7.)

The matter having been briefed, the issue is ripe for disposition. The court has jurisdiction under 28 U.S.C. § 2241.

II.  **Discussion**

Generally, an alien ordered removed from the United States should be removed within a ninety-day removal period and detained during that period. 8

U.S.C. § 1231(a)(1)(A), (B), & (2).  If the alien is not removed during the removal period, he should be released on supervision. Id. §1231(a)(3). However, where the alien has not been removed during the removal period and is removable because of inadmissibility or criminality, the secretary of homeland security may detain the alien beyond the removal period if he determines that the alien poses a risk to the community.[3]  Id. § 1231(a)(6).

Finding that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the due process clause of the Fifth Amendment, Zadvydas, 533 U.S. at 690, the Supreme Court held that 8 U.S.C. § 1231(a)(6) "does not permit indefinite detention," id. at 689.  The Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699.  If, in reviewing the habeas petition of an alien detained beyond the removal period, the district court finds that removal is "not reasonably foreseeable," it must find that the detention is unauthorized and order the alien's supervised release.  Id. at 699-700.

A six-month period of detention, including the removal period, is presumptively reasonable. Id. at 701.  After the six-month period ends, the alien must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to obtain release from detention.

---

[3] The statute refers to the attorney general as the executive officer in charge of enforcing it, but that authority was in fact transferred to the secretary of homeland security. See 6 U.S.C. §§ 552(d), 557; Clark v. Martinez, 543 U.S. 371, 374 n.1 (2005) (citing the Homeland Security Act, codified at 6 U.S.C. §§ 252(2), 252(a)(3), 272(b)).

5

Id. If the alien provides "good reason," the United States must rebut the alien's showing to continue detention. Id. But until an alien shows that there is "no significant likelihood of removal in the reasonably foreseeable future," he may be continued in detention. Id.

Here, the court finds that the relator has shown good reason to believe that his removal in the reasonably foreseeable future is unlikely.[4] Based on the record, the court finds that the relator has been detained, as of the date of this report, nearly one year and seven months since the final removal order was issued. That is over one year longer than the presumptively reasonable detention period. At the time the parties briefed the case, approximately ten months ago, and already after the presumptively reasonable detention period, it was evident that there were problems in effecting the relator's removal, which the respondents acknowledged in their brief. There is no indication in the record that the relator has been uncooperative and the failure to remove him is his fault; indeed, the record indicates the opposite. The delay seems to be the fault of the consulate, which the record indicates has been unforthcoming with a travel document even though it undertook a background check and interview of the relator and the ICE repeatedly contacted it.

Since the parties submitted their briefs, the court has received no notice

---

[4]Although the relator did not himself produce evidence to show "good reason," the respondents did so in their exhibits, which is sufficient. It is reasonable for a detainee, who has limited access to the records and ability to collect evidence, to raise allegations that will be borne out by the record a habeas respondent is required to submit.

6

from any party that the state of the case has changed in any substantial way. Thus, there is nothing to show that the relator's removal is now more likely in the immediate future than it was in August 2005, when the ICE reported that his removal was "imminent."  It is unreasonable to interpret "imminent" so as to encompass a period of over one year.[5]  At this point, the court cannot give credence to the ICE's view that the relator's removal will occur in the near future because the record contradicts the assertion.

Furthermore, the ICE's custody reviews are insufficient under these circumstances to satisfy the relator's rights as addressed in Zadvydas. Although the record shows that the ICE believes the relator is a flight risk, there is nothing more than a pro forma recitation of this belief to substantiate it. The ICE has acknowledged that the relator is "compliant" with the efforts to remove him, the relator claims he is willing to be removed, and the record shows that the relator has not fought against removal since the initial adjudication. The relator has been a lawful permanent resident of the United States since April 3, 1992, and, according to ICE documents, has a place to live in the United States. In addition, the ICE documents also indicate that both of the relator's parents live in the United States and he has employment prospects, a work history, a GED, and vocational training.

---

[5] See OXFORD ENGLISH DICTIONARY ONLINE (2d ed. 1989), at http://dictionary.oed.com (defining "imminent," 1: "Of an event, etc. (almost always of evil or danger): Impending threateningly, hanging over one's head; ready to befall or overtake one; close at hand in its incidence; coming on shortly.").

There is no reasonable basis to believe that the ICE cannot impose appropriate conditions of release that will balance its interest in ensuring that the relator is removed with the relator's liberty interest as discussed in Zadvydas. Accordingly, the court finds that, under 8 U.S.C. § 1231 as interpreted by the Supreme Court in Zadvydas, there is no constitutional justification for prolonging the relator's detention and recommends that the relator's petition for writ of habeas corpus be granted to the extent that he be placed on reasonable conditions of supervised release.

### III.  Conclusion

On the basis of the foregoing, **IT IS RECOMMENDED THAT**:

(1).  the petitioner's petition for writ of habeas corpus be **GRANTED**, and,

(2).  the respondents be **ORDERED** to release the relator to supervision in accordance with 8 U.S.C. § 1231(a)(3) and its implementing regulations at 8 C.F.R. § 241.5 until such time as the ICE has obtained a travel document and can actually remove the relator.


                                        S/ Malachy E. Mannion
                                        **MALACHY E. MANNION**
                                        United States Magistrate Judge

Date: November 15, 2006
O:\shared\REPORTS\2005 Reports\05-2626.01.wpd